UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

ROBERT A. FORTUNATI,                    :
Administrator of the Estate of          :
Joseph Fortunati; ROBERT A.             :
FORTUNATI, SUSAN FORTUNATI; and         :
MARK FORTUNATI,                         :
          Plaintiffs,                   :
                                        :
          v.                            :   File No. 1:07-CV-143
                                        :
ANDREW CAMPAGNE, MARC THOMAS,           :
JEREMY HILL, TODD PROTZMAN, ROB         :
SNETSINGER, KARL GARDNER, HUGH          :
O'DONNELL, MIKE DUDLEY, WALTER          :
GOODELL, and THE STATE OF               :
VERMONT,                                :
                                        :
          Defendants.                   :
_____:

RULING ON DEFENDANTS' PARTIAL MOTION TO DISMISS
(Paper 13)

I. Introduction

     Joseph Fortunati ("Fortunati" or "Joseph") was killed
during a standoff with Vermont State Police when they were
attempting to arrest him.  Robert Fortunati, Administrator of
Joseph Fortunati's estate, Robert Fortunati, individually,
Susan Fortunati and Mark Fortunati ("Plaintiffs"), have brought
suit against several Vermont State Police officers and the
State of Vermont ("Defendants").  Defendants move to dismiss
five counts, all of which are brought on behalf of the estate
of Joseph Fortunati -- Counts I, II, IV and V for failure to

1

state a claim upon which relief can be granted, and Count VI for lack of subject matter jurisdiction.[1]

Defendants move to dismiss Counts I, II and IV as if they contain one claim.  In their response, Plaintiffs point out that these counts contain multiple claims and address them individually.  Because the standard for a motion to dismiss for failure to state a claim upon which relief can be granted is deferential to Plaintiffs, the claims are addressed individually.

Count I is brought against Officers Campagne and Thomas; Count II involves Officers Hill and Snetsinger.  Both claims allege:

        1)   excessive force for shooting Fortunati,

        2)   excessive force for recklessly creating a situation provoking the use of deadly force, and

        3)   gross negligence.

Count IV is brought against Officers Protzman and Goodell who planned and supervised the arrest operation and alleges:

        1)   excessive force for recklessly creating a situation provoking the use of deadly force, and

        2)   gross negligence.

_____

[1] Count III, brought by Robert Fortunati, Susan Fortunati and Mark Fortunati, alleging wrongful arrest under 42 U.S.C. § 1983, is not part of the Motion to Dismiss.

Count V is a state law wrongful death claim against the six state police officers named in Counts I, II and IV.

Count VI is brought against the State of Vermont - State Police, and alleges two theories of liability:

     1)  as employer of the state police officers under 12 V.S.A. § 5601, and

     2)  failure to train and instruct the officers under 42 U.S.C. § 1983.

For the following reasons, Defendants' partial motion to dismiss is denied as to the excessive force claims for shooting Foruntati (Counts I and II); the excessive force claims for recklessly creating a situation provoking the use of deadly force (Count IV); the gross negligence claims (Counts I, II and IV); and the wrongful death claims (Count V).  Defendants' motion is granted as to the excessive force claims for recklessly creating a situation provoking the use of deadly force (Counts I and II), and both claims against the State of Vermont (Count VI).

## II. Background

When considering a Motion to Dismiss for failure to state a claim upon which relief can be granted, the Court accepts the factual allegations in Plaintiff's Complaint as true. Fortunati alleges the following facts in the Complaint:

On June 24, 2006, Fortunati was camping on remote private property in Corinth, Vermont.  Defendants Campagne, Thomas, Hill and Snetsinger, with other state police tactical support unit ("TSU") members, "decided to sneak up on Joseph through the woods to get to Joseph's campsite."  (Complaint at ¶ 7). Defendants claim they went to arrest Fortunati for drawing a handgun during an argument with his family earlier that day. Defendants were dressed in camouflage with painted faces and carried assault rifles.  Defendants knew Fortunati was mentally ill and leery of police, and they did not posses a warrant or have permission to be on the property.

Defendants surrounded Joseph, and "Defendant Hill, without justification, fired a less but potentially lethal 'bean bag' from his shotgun into Joseph." <u>Id.</u> at ¶ 9.  Defendants then fired more "bean bags" hitting Joseph, and "blew out the window of Joseph's car" which was not running and parked at the campsite. <u>Id.</u> at ¶ 10.  Joseph "tried to stand by a tree for protection and take cover from Defendants' excessive, cruel, terrorizing and unconstitutional conduct." <u>Id.</u> at ¶ 11.

Defendants continued shooting beanbags at Fortunati, and when requested he showed Defendants his hands.  "Joseph made no aggressive movements towards Defendants; he simply stood by a tree to avoid being killed." <u>Id.</u> at ¶ 12.  While Fortunati was "showing Defendants his hands, so that they could see he was

4

not brandishing a weapon, Defendant Snetsinger shot Joseph
again [with a bean bag]. . . . Joseph was not fleeing, running,
attacking, or acting aggressively." Id. at ¶ 13.

Other TSU members ordered Joseph to remove his gun from
his waistband, and Joseph complied.  "Joseph did not attack or
attempt to attack Defendants.  Joseph did not point a weapon at
Defendants.  Joseph did not threaten Defendants either verbally
or through physical action." Id. at ¶ 14.  Defendants Campagne
and Thomas fired at least three bullets at Fortunati from a
distance of approximately 60 to 75 feet.  Two shots struck
Fortunati in the face and chest, killing him.  Id.

Plaintiffs claim Defendants knew Fortunati was in a
"remote and isolated area and no others from the public were
around" and that Fortunati had no captives.  Id. at ¶ 18.
Defendants had two negotiators on site but they remained in a
van during the standoff.  Defendants also knew Fortunati's
mental health counselor was available and Fortunati's family
was only three miles away, but they did not allow either to
assist.

Plaintiffs further contend Defendant Protzman and others
"intentionally kept information from" and intentionally ignored
Joseph's father.  Additionally, ". . . Protzman sent two
troopers to the Fortunati residence to conduct a phony and

distracting interview, [while] TSU members were already moving in on Joseph." Id. at ¶ 22.

Finally, Plaintiffs claim Defendants' initial justification for shooting Fortunati "was that Defendants were under fire and that Joseph was shooting at Defendants and they had to defend themselves by returning fire." Id. at ¶ 16. Plaintiffs argue this justification is "absolutely false," as Fortunati never fired a weapon and never shot at Defendants. Id. Plaintiffs then allege "[s]ubsequently as part of a cover-up, Defendants omitted from their investigative reports the first claimed justification [given] for shooting Joseph; . . ." and later formulated another justification during the investigation. Id. Plaintiffs maintain that "none of the Defendants' investigative reports mentioned that the first story allegedly justifying the killing was withdrawn." Id.

III. Discussion

A. Standard for 12(b)(6) Motion to Dismiss

In a motion to dismiss for failure to state a claim upon which relief can be granted, the Court accepts the facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007). "All complaints must be read liberally; dismissal on the pleadings never is warranted unless the plaintiff's allegations are

6

doomed to fail under any available legal theory." <u>Phillips v. Girdich</u>, 408 F.3d 124, 128 (2d Cir. 2005). "A motion to dismiss should not be granted where there exists a 'plausible entitlement to relief.'" <u>Keene v. Schneider</u>, No. 2:07-CV-79, 2007 WL 2463270, at *3 (D. Vt. Aug. 28, 2007) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1967 (2007)).

> B.   <u>Counts I, II and IV - Excessive Force and Qualified Immunity</u>

Defendants move to dismiss Counts I, II and IV on the grounds that Plaintiffs have failed to allege a viable Fourth Amendment claim and alternatively, the police officers are entitled to qualified immunity. An analysis of the qualified immunity issue necessarily resolves the failure to allege a viable Fourth Amendment violation.

Qualified immunity protects government officials from liability for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Courts have acknowledged that "[q]ualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)). Courts therefore emphasize "the importance of resolving immunity questions at the earliest possible stage in litigation." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991).

When a party asserts qualified immunity in a motion to dismiss, however, rather than in a motion for summary judgment, "the defense faces a formidable hurdle . . ." and "must accept the more stringent standard applicable to this procedural route." McKenna v. Wright, 386 F.3d 432, 434, 436 (2d Cir. 2004). Further, plaintiff is entitled to all reasonable inferences from the facts alleged in the complaint -- those that support his claim and those that defeat the immunity defense. Id.

The qualified immunity defense involves a two-part analysis. The initial question is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 201. If so, "whether the right was clearly established" must be examined "in light of the specific context of the case . . . ." Id.

1.   Violation of a Constitutional Right

The Plaintiffs allege the officers violated Fortunati's constitutional right to be free from excessive force. The Supreme Court has made clear that "all claims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." This "reasonableness" inquiry is an objective one, so the

8

relevant question is "whether the officers' actions are
'objectively reasonable' in light of the facts and
circumstances confronting them, without regard to their
underlying intent or motivation."  Graham v. Connor, 490 U.S.
386, 395, 397 (1989).  Among the circumstances to be considered
are the "severity of the crime at issue, whether the suspect
poses an immediate threat to the safety of the officers or
others, and whether he is actively resisting arrest or
attempting to evade arrest by flight."  Id. at 396, 1872.  When
considering these circumstances, "[t]he reasonableness of a
particular use of force must be judged from the perspective of
a reasonable officer on the scene, rather than with the 20/20
vision of hindsight."  Id.

a.   <u>Excessive force in shooting Fortunati</u>
<u>(Counts I and II)</u>

Under <u>Graham</u>, the Court must first ask whether the force
the officers applied was objectively reasonable in light of the
facts and circumstances confronting them.  The police were
seeking to arrest Fortunati for "having an argument with family
members early in the day . . . and for drawing a handgun during
that argument."  (Complaint at ¶ 8).  It is not known what
level of crime was involved, but the family altercation was not
in progress when the police approached Fortunati's campsite.

Fortunati did have a gun in his possession, but whether he
posed an immediate threat to the safety of the officers or

9

others is unclear.  According to the Complaint, Officer Hill
shot the bean bag at Fortunati "without justification," and
Officer Snetsinger fired another bean bag at Fortunati while
Fortunati was showing his hands to the officers.  Id. at ¶¶ 9,
13.  Fortunati did not attack Defendants, point a weapon at
them, or threaten them verbally or physically.  Even so,
Defendants Campagne and Thomas fired at least three bullets at
Fortunati from a distance of 60 to 75 feet.  Id. at ¶¶ 14, 15.

It is also disputed whether Fortunati was evading arrest
or attempting flight, or rather, as the Complaint states "tried
to stand by a tree for protection and take cover from
Defendants' excessive, cruel, terrorizing and unconstitutional
conduct." Id. at ¶ 11.  Considering these facts in the
Complaint to be true, it is plausible that Fortunati is
entitled to relief for violation of his Fourth Amendment
rights.  Therefore, Plaintiffs' Complaint passes the first
inquiry in the qualified immunity analysis.

> b.  <u>Excessive force by recklessly creating a
> situation provoking the use of deadly force
> (Counts I, II and IV)</u>

In Counts I and II, Plaintiffs claim "an independent
Fourth Amendment violation [for] recklessly provoking
subsequent events." (Paper 17-2 at 15).  The cases Plaintiffs
cite for support, however, address only whether the actions
leading up to the use of deadly force should be considered in

deciding whether the force was reasonable, not whether the actions leading up to the use of force are independent Fourth Amendment violations.  Accordingly, Defendants' motion to dismiss the excessive force claims in Counts I and II for recklessly creating a situation intended to provoke the use of deadly force is granted.

In Count IV, the excessive force claim against Officers Protzman and Goodell is based on their decisions as operational leaders who recklessly created a situation provoking the use of deadly force.  (Paper 17-2 at 15).  Plaintiffs argue "courts have recognized a cause of action under the Fourth Amendment against the operational leaders, decision makers, and those in charge whose decisions recklessly create a situation provoking the use of deadly force." Id.  Specifically, Plaintiffs assert: "Defendants Protzman and Goodell were in charge of the operation.  It was their instruction to deploy the TSU members after Joseph.  These Defendants knew of Joseph's emotional and mental problems." (Id. at 18).

The parties disagree as to whether this claim exists as an independent cause of action under the Fourth Amendment.  Case law addressing whether the decision to use a tactical team may be considered excessive force is sparse.  Both the Third and Tenth Circuits, however, have acknowledged this theory as a cause of action to be analyzed under the Fourth Amendment.

In a Third Circuit case the court states: ". . . a decision to employ a SWAT-type team can constitute excessive force if it is not 'objectively reasonable' to do so in light of 'the totality of the circumstances.'" Estate of Smith v. Marasco, 430 F.3d 140, 149 (3d Cir. 2005). See also Estate of Smith v. Marasco, 318 F.3d 497, 517 (3d Cir. 2003) (noting "given Smith's history of mental problems and possession of weapons, . . . [t]he question . . . was not simply whether the officers reasonably believed their lives were in danger, but whether the activation of SERT and the tactics of that unit were a reasonable response to that belief in the circumstances of this case.").

The Tenth Circuit has taken the same approach. "Where a plaintiff claims that the use of a SWAT team to effect a seizure itself amounted to excessive force, we review the decision to use that degree of force by 'balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" Holland v. Harrington, 268 F.3d 1179, 1190 (10th Cir. 2001) (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)). See also Warren v. Williams, No. 304CV537, 2006 WL 860998, at *27 (D. Conn. Mar. 31, 2006) (analyzing the decision to use a Tactical Team under the Fourth Amendment, citing Holland and Marasco for support).

Defendants cite Seventh and Eighth Circuit case law for the propositions that courts scrutinize the reasonableness of the seizure alone, not the events leading up to it, and that the Fourth Amendment does not address whether the course chosen was the best of available alternatives or the least intrusive alternative.  See Cole v. Bone, 993 F.2d 1328, 1333 (8th Cir. 1993), Schulz v. Long, 44 F.3d 643, 649 (8th Cir. 1995) and Plakas v. Drinski, 19 F.3d 1143, 1149 (7th Cir. 1994).  Salim v. Proulx, 93 F.3d 86 (2d Cir. 1996), the only Second Circuit case cited by Defendants, involves a negligence claim for creating a situation in which the use of deadly force became necessary.  That court viewed the actions leading up to the shooting as irrelevant to the objective reasonableness of the officer's conduct at the moment he employed deadly force, but did not consider those actions under the guise of an independent Fourth Amendment violation.  Id. at 92.

Given that the decision to use a tactical team has been recognized in some jurisdictions as a cause of action under the Fourth Amendment, and the standard for a motion to dismiss for failure to state a claim upon which relief can be granted is deferential, Plaintiffs meet the threshold inquiry in the qualified immunity analysis for this claim within Count IV.

2.   <u>Whether the Constitutional Right was Clearly
     Established</u>

If a plaintiff's complaint properly alleges a violation of
a constitutional right, the next inquiry is whether that right
was clearly established.   <u>Saucier</u>, 533 U.S. at 201.  The
Second Circuit has further refined this inquiry into two parts,
so that qualified immunity exists when "'(a) the defendant's
action did not violate clearly established law, or (b) it was
objectively reasonable for the defendant to believe that his
action did not violate such law.'" <u>Poe v. Leonard</u>, 282 F.3d
123, 133 (2d Cir. 2002) (quoting <u>Tierney v. Davidson</u>, 133 F.3d
189, 196 (2d Cir. 1998)).[2]

The Second Circuit has acknowledged "[t]he right of an
individual not to be subjected to excessive force has long been
clearly established.  <u>Calamia v. City of New York</u>, 879 F.2d
1025 (2d Cir. 1989); <u>Keene v. Schneider</u>, No. 2:07-CV-79, 2007
WL 2463270, at *4 (D. Vt. Aug. 28, 2007).  Therefore, the
relevant inquiry becomes whether it was objectively reasonable
for Officers Campagne, Thomas, Hill, Snetsinger, Protzman and
Goodell to believe their actions did not violate that right.

---

[2]Another approach to qualified immunity used by the Second
Circuit finds a right is clearly established if (1) the law is
defined with reasonable clarity, (2) the Supreme Court or the
Second Circuit has recognized the right, and (3) "a reasonable
defendant [would] have understood from the existing law that
[his] conduct was unlawful." <u>Anderson v. Recore</u>, 317 F.3d 194,
197 (2d Cir. 2003) (internal citations omitted).  Under this
analysis, however, the result would be the same.

Considering the circumstances they faced, it cannot be determined at this stage of the proceedings that it was objectively reasonable for the officers to believe their actions -- using a SWAT team, shooting Fortunati with bean bags and live ammunition -- did not violate his right to be free from excessive force.

Therefore, Defendants' motion to dismiss the excessive force claims in Counts I and II for shooting Fortunati and their motion to dismiss the excessive force claim in Count IV for recklessly creating a situation provoking the use of deadly force are denied.

C. Counts I, II and IV - Gross Negligence Claims

Plaintiffs assert claims of gross negligence against Officers Campagne, Thomas, Hill, Snetsinger, Protzman and Goodell within Counts I, II and IV.  Although Defendants do not specifically request dismissal of these claims, they move to dismiss the Counts in their entirety.  The basis for these claims is unclear.  Although Plaintiffs' Complaint demands judgment under 42 U.S.C. § 1983, their filings suggest these claims fall under 12 V.S.A. § 5602 and are not protected by the Eleventh Amendment.  (Paper 17-2 at 19-20).  Since there is insufficient information at this point to determine the viability of the gross negligence claims, Defendants' motion to dismiss them is denied.

15

D. <u>Count V - Wrongful Death Claims</u>

Defendants move to dismiss Plaintiffs' state law claims for wrongful death.  For a right of action to exist, Vermont's wrongful death statute requires a "wrongful act, neglect or default of a person or corporation."  12 V.S.A. § 1491. Defendants maintain that Fortunati's death was not caused by any "wrongful" act because "Defendants' actions were lawful and reasonable given the circumstances alleged in the Complaint." (Paper 13 at 17).  Taking as true the allegations of the Complaint, Defendants' actions were not objectively reasonable and therefore lawful.  The complaint sufficiently pleads "wrongful" acts to avoid being dismissed.

Defendants assert the actions of Hill and Snetsinger in shooting Fortunati with the less-than-lethal bean bags, did not cause Fortunati's death because they did not hurt or kill him. In a wrongful death action, a plaintiff must prove: "One, the negligence led to the death in a natural and uninterrupted sequence of events.  Two, the negligence was a substantial factor in bringing about the death.  And, three, the death would not have happened if that defendant had not been negligent."  <u>Rooney v. Med. Ctr. Hosp. of Vt., Inc.</u>, 162 Vt. 513, 523, 649 A.2d 756, 762 (1994).  Taking the facts alleged in the Complaint as true, and drawing all reasonable inferences in favor of Plaintiffs, it is entirely possible Hill and

Snetsinger's actions caused Fortunati's death.  The Complaint alleges "Defendants fired more 'bean bags' at Joseph, hitting Joseph" and further claims "Joseph, who was being attacked . . . tried to stand by a tree for protection and take cover from Defendants' excessive, cruel, terrorizing and unconstitutional conduct."  (Complaint at ¶¶ 10, 11).  Defendants argue Campagne and Thomas were reasonable in shooting Fortunati because they "were aware that the less-than-lethal alternatives already employed had been unsuccessful."  (Paper 13 at 12).  So, is it not a reasonable conclusion that by shooting the bean bags Hill and Snetsinger "set a sequence of events in motion . . . which started the terrible and horrifying subsequent events,"  (Paper 17-2 at 21) and that Hill and Snetsinger's actions led to Fortunati's death?  Had their actions not been negligent, Fortunati's death would not have occurred.

Accordingly, Defendants' motion to dismiss Count V for failure to state a claim upon which relief can be granted is denied.

E. Standard for § 12(b)(1) Lack of Subject Matter
   Jurisdiction

In reviewing a motion to dismiss under § 12(b)(1), the Court takes the facts alleged in the complaint as true and draws all reasonable inferences in favor of plaintiff.  Natural

17

Resources Defense Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006).[3]

F.    Count VI - Claims Against State of Vermont - State Police

Plaintiffs allege the State of Vermont is liable under two theories: (1) as employer of the police officers, under 12 V.S.A. § 5601, and (2) for failure to train and instruct, under 42 U.S.C. § 1983.  Defendants' motion also addresses claims against the officers in their official capacities, but Plaintiffs' response clarifies the officers are being sued only in their individual capacities.

1. Liability under 12 V.S.A § 5601

Under 12 V.S.A. § 5601(a), the state is liable for injury or loss of life caused by the negligent or wrongful acts of an employee acting within the scope of employment, just as a private person would be liable, but "[t]he superior courts of the state shall have exclusive jurisdiction of any actions brought hereunder."  Additionally, 12 V.S.A. § 5601(g)

_____

[3]Defendants claim no presumptive truthfulness should be given to the factual allegations when reviewing a 12(b)(1) motion to dismiss.  Case law distinguishes between a facial attack, which questions the sufficiency of the pleading, and a factual attack, where there is no presumption of truth given to the allegations of the complaint.  Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990).  Defendants' motion involves a facial attack, arguing the pleadings are insufficient because the state cannot be a defendant in a lawsuit seeking relief under 42 U.S.C. § 1983, so it is proper to presume the allegations in the Complaint are true.

provides: "Nothing in this chapter waives the rights of the state under the Eleventh Amendment of the United States Constitution."  Accordingly, this Court does not have subject matter jurisdiction over a claim against the State of Vermont arising under 12 V.S.A. § 5601 and this portion of Count VI is dismissed.

     2. <u>Liability under 42 U.S.C. § 1983</u>

Plaintiffs claim the state is liable for "failure, through its agents the State Police, to properly and adequately train and instruct the members of the department, including the named Defendants, in the proper manner of dealing with emotionally disturbed and mentally ill individuals."  (Complaint at ¶ 49).  According to Plaintiffs, ". . . where conduct by the State or its agents shocks the conscience, the *State agent* can be sued in federal court for violation of the Fourteenth Amendment." (Paper 17-2 at 22, emphasis added).

According to the Supreme Court, "Section 1983 . . . does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity . . . or unless Congress has exercised its undoubted power . . . to override that immunity," so as a result, ". . . neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  <u>Will v.</u>

19

<u>Michigan Dep't of State Police</u>, 491 U.S. 58, 66, 71 (1989). Therefore, Plaintiffs' claims against the State of Vermont under 42 U.S.C. § 1983 are barred by the Eleventh Amendment and are dismissed for lack of subject matter jurisdiction.

IV. <u>Conclusion</u>

Defendants' motion to dismiss is DENIED as follows:

(a)  excessive force claims against Defendants Campagne, Thomas, Hill and Snetsinger for shooting Fortunati (Counts I and II);

(b   excessive force claims against Defendants Protzman and Goodell for recklessly creating a situation provoking the use of deadly force (Count IV); and

(c)  gross negligence claims (Counts I, II and IV) and wrongful death claims (Count V) against Defendants Campagne, Thomas, Hill, Snetsinger, Protzman and Goodell.

Defendants' motion to dismiss is GRANTED as follows:

(a)  excessive force claims against Defendants Campagne, Thomas, Hill and Snetsinger for recklessly creating a situation provoking the use of deadly force (Counts I and II); and

(b)  all claims against the State of Vermont (Count VI).

Defendants' answer to Plaintiffs' Complaint shall be filed within ten (10) days of the date of this Ruling, and the parties' proposed discovery schedule, pursuant to Local Rule 26.1, shall be filed within 30 days thereafter.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 25th day of January, 2008.

                                                 /s/ J. Garvan Murtha
                                                 J. Garvan Murtha
                                                 United States District Judge