UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

ROBERT A. FORTUNATI,  
Administrator of the Estate of  
Joseph Fortunati, ROBERT A.  
FORTUNATI, SUSAN FORTUNATI and  
MARK FORTUNATI,  
      Plaintiffs,  
    v.                                File No. 1:07-CV-143

ANDREW CAMPAGNE, MARC THOMAS,  
JEREMY HILL, TODD PROTZMAN,  
ROB SNETSINGER, KARL GARDNER,  
HUGH O'DONNELL, MIKE DUDLEY,  
and WALTER GOODELL,  
      Defendants.

RULING ON PLAINTIFFS' MOTION TO COMPEL AND
VERMONT ATTORNEY GENERAL'S MOTION TO INTERVENE AND
MOTION FOR PROTECTIVE ORDER
(Papers 42, 56 and 59)

I. Background

In this § 1983 action, Plaintiffs sue members of the Vermont State Police and the State of Vermont alleging Defendants acted with gross negligence and recklessness, thereby creating a situation provoking the use of deadly force and Joseph Fortunati's death. The Criminal Division of the Vermont Attorney General's Office (A.G.'s Office) conducted a review and investigation to determine whether criminal charges should be filed in connection with Fortunati's death. The A.G.'s Office has completed that investigation and did not file criminal charges.

1

On November 19, 2008, Plaintiffs filed a Motion to Compel Production of Documents created during the investigation that were withheld under claim of privilege. (Paper 42.) Plaintiffs requested the documents from Defendants, although the documents are actually under control of the A.G.'s Office, which is not an original party to this action. In an Order dated December 31, 2008, the Court indicated it was inclined to grant portions of Plaintiffs' Motion to Compel, but ordered production of the privileged documents for <u>in camera</u> review. The A.G.'s Office produced the documents for the Court and also filed a Motion to Intervene (Limited) and a Motion for Protective Order seeking to protect the documents from discovery by Plaintiffs. (Papers 56 and 59.) After review of the parties' filings and the disputed documents, the Court GRANTS the A.G.'s Office's Motion for Intervention (Limited), DENIES Plaintiffs' Motion to Compel, and DENIES the A.G.'s Office's Motion for Protective Order.

II. <u>Analysis</u>

    A. <u>Motion for Limited Intervention</u>

For the reasons below, the A.G.'s Office is granted permissive intervention under Federal Rule of Civil Procedure 24(b) for the limited purpose of opposing Plaintiffs' Motion to Compel. Because permissive intervention is granted, it is unnecessary to decide whether the A.G.'s Office has a right to intervention under Rule 24(a).

Permissive intervention is the proper vehicle for the A.G.'s Office to challenge Plaintiffs' Motion to Compel because it is not a party to this action. Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291, 294 (2d Cir. 1979) (explaining that a proper procedure for the Government to challenge a discovery order in a civil action between private parties is to "intervene in the action pursuant to Rule 24(b) . . . for the limited purpose of seeking modification of the . . . order"). Permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B) is allowed where (1) the motion is timely and (2) the party seeking intervention "has a claim or defense that shares with the main action a common question of law or fact." The A.G.'s Office meets each of these requirements.

The motion is timely because the A.G.'s Office acted promptly in response to the Court's December 31, 2008 Order by seeking intervention in advance of the Court's in camera review and ruling on Plaintiffs' Motion to Compel. Moreover, Plaintiffs are not prejudiced by allowing intervention because it will not unduly delay adjudication of the original rights of the parties. The A.G.'s Office satisfies the second prong of the test because it owns the documents which are the subject of Plaintiffs' Motion to Compel and has a colorable interest in asserting its privilege to protect those documents from discovery. For the foregoing reasons, the Motion for Limited Intervention is granted.

B.  Motion to Compel Production of Documents

Plaintiffs seek to discover four types of documents: (i) documents created by the Vermont State's Attorney concerning the investigation; (ii) internal letters and e-mails concerning the A.G.'s Office's investigation; (iii) internal memoranda concerning the A.G.'s Office's investigation; and (iv) draft press releases and documents concerning press conferences created by the A.G.'s Office.  The A.G.'s Office argues these documents may be withheld from discovery because they are protected by the deliberative process privilege, the attorney work product doctrine and the investigative files privilege.  The Court finds the documents are privileged under the deliberative process privilege and the attorney work product doctrine, and therefore does not consider whether the documents are protected under the investigative files privilege.

1.  Deliberative Process Privilege

"The government's deliberative process privilege protects the decisionmaking processes of the executive branch in order to safeguard the quality and integrity of governmental decisions." A. Michael's Piano, Inc. v. FTC, 18 F.3d 138, 147 (2d Cir. 1994) (internal quotation and citation omitted).  The privilege is "designed to promote the quality of agency decisions by preserving and encouraging candid discussion between officials."

Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d Cir. 2005) (citing Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001)).  The privilege recognizes "frank discussion of legal or policy matters in writing might be inhibited if the discussion were made public; and that the decisions and policies formulated would be the poorer as a result."  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975).  The privilege also ensures "the time and energies of public officials [are] conserved for the public's business to as great an extent as may be consistent with the ends of justice . . . ."  Gomez v. City of Nashua, NH, 126 F.R.D. 432, 434 (D.N.H. 1989) (citing Cmty. Fed. Sav. & Loan Assoc. v. Fed. Home Loan Bank, 96 F.R.D. 619, 621 (D.D.C. 1983).

The privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies formulated."  NLRB v. Sears, 421 U.S. at 150 (internal quotations omitted).  The privilege distinguishes, however, "predecisional communications, which are privileged . . . and communications made after the decision and designed to explain it, which are not."  Id. at 151.  The Second Circuit has therefore held a document "may be withheld pursuant to the deliberative process privilege if it is:  (1) predecisional, i.e., prepared in order to assist an agency decisionmaker in arriving at his decision,

5

and (2) deliberative, i.e., actually . . . related to the process by which [decisions] are formulated." Nat'l Council of La Raza, 411 F.3d at 356 (internal quotation and citation omitted).

The Court finds the policies behind the deliberative process privilege apply to the A.G.'s Office's deliberations about whether to prosecute the state officials for alleged misconduct. The Court also finds the following documents are predecisional and deliberative, and are therefore covered by the privilege: (i) internal letters and e-mails concerning the A.G.'s Office's investigation; (ii) internal memoranda concerning the A.G.'s Office's investigation; and (iii) documents created by the Vermont State's Attorney concerning the investigation. To the extent any of the covered documents are factual, rather than deliberative, in nature, the Court notes all "substantive evidence and information gathered and reviewed by the [A.G.'s Office] in connection with the shooting of Joseph Fortunati . . . has been produced to Plaintiffs." Affidavit of Cindy Maguire, Chief of the Criminal Division, Vermont A.G.'s Office at ¶ 6.

Just because a document satisfies these requirements, however, does not mean the deliberative process privilege bars its disclosure. The privilege is qualified, not absolute. Ass'n for Reduction of Violence v. Hall, 734 F.2d 63, 66 (1st Cir. 1984). Courts reviewing a claim of privilege balance the parties' conflicting interests on a case-by-case basis.

Disclosure should be directed "only after the trial court has made a determination that plaintiff's need for the information outweighs the defendant's claim of privilege." In re United States, 565 F.2d 19, 23 (2d Cir. 1977). "The burden of establishing the need for disclosure is upon the person who seeks it. This burden is not met by mere speculation that identification might possibly be of some assistance." Id. The interest of the party seeking disclosure is strongest when the information sought is "highly relevant, helpful, and unavailable from other sources." Gomez, 126 F.R.D. at 435. The interest of the party asserting the privilege is strongest when the information "falls squarely within the definition of privilege and its disclosure would undermine the public interest in free, candid, and uninhibited exchange of information . . . ." Id. (internal quotations and citations omitted).

In camera inspection aids the court in determining and balancing the parties' interests. The Court has inspected the privileged documents and considered the parties' memoranda. Based on its inspection, the Court finds Plaintiffs have not shown the information contained in the documents is highly relevant, helpful or unavailable from other sources. As noted above, the A.G.'s Office has provided Plaintiffs with all substantive evidence and information gathered and reviewed in connection with the investigation. Thus, what Plaintiffs seek is

7

information on the A.G.'s Office's deliberative process in deciding not to bring charges against the Defendants. The Court has reviewed the privileged documents and finds they are deliberative in nature. The information falls squarely within the privilege, and therefore Plaintiffs' Motion to Compel production of these documents is denied.

2. <u>Attorney Work Product Doctrine</u>

The A.G.'s Office also claims the documents Plaintiffs seek are privileged under the attorney work product doctrine. Plaintiffs contend the A.G.'s Office cannot rely on the attorney work product doctrine because Federal Rule of Civil Procedure 26(b)(3)(A) does not protect from discovery documents prepared by lawyers for a non-party, even if the documents were created in contemplation of litigation.[1] Plaintiffs point to Rule 26(b)(3)'s language, which protects only documents prepared "in anticipation of litigation or for trial by or for another party or by or for that party's representative." See <u>Gomez</u>, 126 F.R.D. at 434; <u>FTC v. Grolier</u>, 462 U.S. 19, 25 (1983) ("[T]he literal language of the Rule protects materials prepared for <u>any</u> litigation or trial as long as they were prepared by or for a party to the subsequent litigation.") Plaintiffs argue the

---

[1] Plaintiffs also contend the documents are not entitled to protection because they were created in the ordinary course of business. This argument must be rejected outright because accepting this view would eviscerate the privilege for any attorney practicing law.

8

Vermont A.G.'s Office is not a party to this action, and therefore cannot seek to shelter the disputed documents under the Rule.

The work product doctrine articulated by the Supreme Court in Hickman v. Taylor, 329 U.S. 495 (1974), however, is broader than Rule 26(b)(3). See Abdell v. City of New York, 2006 WL 2664313 at *3 (S.D.N.Y. 2006) (collecting cases). Under Hickman, Courts may provide work product immunity if disclosure would (1) alter attorney behavior, (2) reward sloth or (3) interfere with ongoing litigation. See e.g., Haus v. City of New York, 2006 WL 3375395, at *3 (S.D.N.Y. 2006) ("[T]he inapplicability of Rule 26(b)(3) does not preclude granting similar immunity [to non-parties] under the common-law work-product doctrine."); Abdell, 2006 WL 2664313, at *4 (summarizing the "three purposes" of immunity under Hickman).

The Court does not find disclosure of the documents would reward sloth or interfere with ongoing litigation. Production in a civil case of documents from a former criminal prosecution would not reward a slothful attorney at the expense of a diligent attorney. The production would likewise not interfere with an ongoing investigation since the A.G.'s Office's investigation has terminated.

Production would, however, markedly alter attorney behavior. These are not documents which are routinely disclosed during a

9

criminal investigation.  The Court has reviewed the documents and finds they reflect the sifting of information, legal analysis, mental impressions, conclusions and opinions of the A.G.'s Office and investigators working for the A.G.'s Office.  Their potential disclosure in later, related civil cases would create detrimental chilling effects on the Attorney General, the Assistant Attorneys General, and the investigators who author the documents.  Because the documents fall squarely within the definition of "core" work product entitled to the highest level of protection and Plaintiffs have access to the factual information underlying these reports and memoranda, the Court finds the documents are likewise protected under the work product privilege.

Finally, the Court notes the draft press releases, which did not qualify for protection under the deliberative process privilege, do qualify for protection under the work product privilege.  Preparation of press releases is a key step in the A.G.'s Office's handling of a prosecution, and the draft press releases reflect the attorneys' process of assembling information and sifting facts to reflect a cohesive theory of the case.  See Hickman, 329 U.S. at 511.  Upon review of the press releases in camera, the Court concludes the A.G.'s Office has not, in protecting the drafts from discovery, withheld information tending to show a false justification for the shooting.

III. Conclusion

For the foregoing reasons, the Vermont Attorney General's Motion for Intervention (Limited) (Paper 56) is GRANTED; Plaintiffs' Motion to Compel Production of Documents (Paper 42) is DENIED; and the Vermont Attorney General's Motion for Protective Order (Paper 59) is DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 12th day of February, 2009.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge