# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF VERMONT

|  |  |  |
|---|---|---|
| Robert A. Fortunati, Administrator of the Estate | ) | |
| of Joseph Fortunati, Robert A. Fortunati, Susan | ) | |
| Fortunati, and Mark Fortunati, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 1:07-cv-143 |
| | ) | |
| Andrew Campagne, Marc Thomas, Jeremy Hill, | ) | |
| Todd Protzman, Rob Snetsinger, Karl Gardner, | ) | |
| Hugh O'Donnell, Mike Dudley, Walter Goodell, | ) | |
| and the State Of Vermont, | ) | |
| Defendants. | ) | |

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendants Andrew Campagne, Marc Thomas, Jeremy Hill, Todd Protzman, Rob Snetsinger, Karl Gardner, Hugh O'Donnell, Mike Dudley, and Walter Goodell submit the following statement of undisputed material facts, pursuant to V.R.C.P. 56, in support of their motion for summary judgment.

1. On June 23, 2006, Vermont State Troopers responded to a call from state and federal environmental workers regarding a man blocking a public road in Corinth, Vermont. Exhibit A, Report of Trooper Scott Amado, at AG 737.

2. The man turned out to be Joseph Fortunati. *Id.*

3. Vermont State Troopers were told that on June 19, 2006 and again on June 23, 2006, environmental workers had gone to a rural area of Corinth, Vermont, to perform environmental testing. *Id.*

4. VSP Troopers were told that Joseph Fortunati confronted the environmental workers when they went to perform the testing in Corinth, Vermont. *Id.*

5.      Sometime prior to June 24, 2006, Joseph Fortunati had set up a camp on a public right of way, blocking the road with a make-shift road block and posting no trespass signs.  *Id.*

6.      VSP Troopers were told that on each occasion when the environmental workers confronted Joseph Fortunati, they had withdrawn from the area without performing their work, due to what they perceived as Fortunati's bizarre and threatening behavior.  *Id.*

7.      At Robert Fortunati's suggestion, VSP Troopers agreed to allow family members to contact Joseph and attempt to convince him to move his camp to nearby family land.  *Id.*

8.      Robert Fortunati, Sr. called VSP regarding the family members' meeting with Joseph.  Exhibit A, at AG 738; Deposition or Robert A. Fortunati (R.A. Fortunati Dep.), at 157-166.

9.      Robert Fortunati, Sr. told VSP Troopers that Joseph Fortunati had removed a handgun from his belt, aimed it as his brother, and threatened to kill him.  Exhibit B, C; R.A. Fortuanti Dep., at 155-57, 163, 172.

10.     Robert Fortunati, Sr. told VSP Troopers that as the family withdrew, Joseph Fortunati pointed his gun in their direction and told them that if they ever returned, he would kill them.  Exhibit C; R.A. Fortunati Dep., at 155, 162-63, 172.

11.      Joseph Fortunati committed two felonies, aggravated assault and first degree aggravated domestic assault, when he threatened his family on June 24, 2006.

12.     During his call to the State Police, Robert Fortunati told VSP Troopers that Joseph Fortunati had a gun "right in his belt," and that he "could use it against Troopers, a hiker, or "anybody."  Exhibit B, at 1-3; R.A. Fortunati Dep., at 163-66.

13.     VSP Troopers were aware of several prior events involving Joseph Fortunati. Deposition of Scott Amado (Amado Dep.), at 27; Deposition of Marc Thomas (Thomas Dep.), at

31-32; Deposition of Mark Magnant (Magnant Dep.), at 62-63; Kirkham Dep., Vol. I, at 177, Vol. II, at 24.  VSP Troopers were told that Fortunati had twice attempted to elude police officers, including a 43 mile car chase during which Fortunati displayed a firearm to Troopers attempting to pull him over, and another attempt to elude police officers while driving. Deposition of Robert (Snetsinger Dep.), at 106-108.

14.     VSP Troopers were told that Joseph Fortunati had physically resisted being taken into custody by Troopers in the past, that on one occasion it had taken four Troopers to restrain Fortunati, and Fortunati had broken one of the Trooper's thumbs.  Deposition of Edward Twohig (Twohig Dep.), at 43-44.

15.     Joseph Fortunati was in possession of a firearm on June 24, 2006.   Deposition of Walter Goodell (Goodell Dep.), at 66; Thomas Dep., at 36, 99; Magnant Dep., at 24, 51-53, 161; Deposition of Joseph Paquette (Paquette Dep.), at 90; Kirkham Dep., Vol. I, at 24, 42.

16.     VSP were told that Joseph Fortunati suffered from serious mental illness, having been diagnosed with bipolar disorder and paranoid schizophrenia, and that he had not taken prescribed medications for some time.  Amado Dep., at 20-21; Thomas Dep., at 37; Snetsinger Dep., at 106-107; Deposition of Todd Protzman (Protzman Dep.), at 127-128; Goodell Dep., at 63; Deposition of Alfred Herzog (Herzog Dep.), at 33.

17.     Joseph Fortunati's mental illness made Fortunati especially volatile and dangerous.  Herzog Dep., at 23, 27, 44-47, 60, 63, 68.

18.     Joseph Fortunati was camped on a public right of way, in a wooded area used by the general public for recreational purposes.  Protzman Dep., at 24; Goodell Dep., at 119.

19.     VSP Troopers were informed that at least one Corinth resident, who had previously jogged in the area near Fortunati's camp, had begun avoiding the area because of Fortunati.  Amado Dep., at 11-12.

20.     In the location near his camp, Fortunati had come in contact with the public on multiple occasions. Thomas Dep., at 39-40; Magnant Dep., at 159-160; Goodell Dep., at 60-61; Paquette Dep., at 91; Kirkham Dep., Vol. I, at 178, 180, Vol. II, at 5, 7-8.

21.     Well over twenty private residences were located within a mile and a half radius of Joseph Fortunati's camp.  *See* Protzman Dep., at 134-135; R.A. Fortunati Dep., at 104.

22.     After the phone call from Robert, Sgt. Protzman believed that the situation was potentially very dangerous and contacted his superiors to brief them on the situation and request assistance of the TSU.  Exhibit G, at AG 866; Protzman Dep., at 7-9.

23.     Protzman did not have the authority to activate the TSU.  *See* Protzman Dep., at 8.

24.     Other than providing information regarding the events leading up to TSU activation, Protzman had no role in planning the TSU mission.  *Id.* at 7.

25.     Captain Walter Goodell, the Troop Commander for the State Police's "B Troop," was informed of the nature of the incidents that had occurred earlier that week and the armed threat against the Fortunati family.  *See* Protzman Dep., at 18, 22, 25-27; Goodell Dep., at 59-61.

26.     Captain Goodell inquired about the area in which Fortunati was camped in order to determine the potential for the general public to encounter Fortunati.   Goodell Dep., at 60-62.

27.     Captain Goodell felt the situation was too dangerous to be safely handled by uniformed Troopers, so he contacted his superior officer and requested activation of the TSU.  *Id.*.  *Id.* at 60-62, 66-67.

28.     VSP members, including Captain Goodell, TSU Commander Lieutenant Evans, and members of the TSU, met and discussed relevant information, and formulated a plan to take Joseph Fortunati into custody.

29.     The plan to take Joseph into custody called for the TSU to locate Fortunati, contain him, and if possible arrest him or negotiate with him.  Goodell Dep., at 129; Deposition of Robert Evans (Evans Dep.), at 86; Thomas Dep., at 14; Magnant Dep., at 26, 158.  Deposition of Charles J. Key (Key Dep.), at 87, 97-100.

30.     Members of the HNU would be available to engage Fortunati if appropriate once the situation was contained enough to allow their safe participation.  Goodell Dep., at 97-102; Evans Dep., at 83-84; Barney-Hingo Dep., at 38; Thomas Dep., at 39; Magnant Dep., at 93-94, 161.

31.     All of the information garnered by the VSP about Joseph Fortunati was given to the TSU Defendants in a briefing held at the Bradford State Police barracks prior to the deployment of the TSU.  *See e.g,* Goodell Dep., at 83-85; Thomas Dep., at 25, 31-33, 35, 37; Magnant Dep., at 24, 51-53, 62-63, 159-161; Snetsinger Dep., at 106-108, 127; Hill Dep., at 96-97, 130.

32.     The TSU members were well aware of the criminal conduct of Fortunati on the day of the incident, his prior history of violence and resistance, the fact that he was likely armed, and his uncontrolled serious mental illness.

33.     As the TSU team approached Fortunati's campsite, Trooper Robert Snetsinger saw Fortunati and attempted to engage him in conversation.  Snetsinger Dep., at 27, 30-31; Magnant Dep., at 32-33.  Thomas Dep., at 69; O'Donnell Dep., at 54.

34.     Fortunati identified himself as Joe, but did not comply with a request to come down the road further.  Snetsinger Dep., at 34; Thomas Dep., 69-70; Hill Dep., at 12.  Instead, Fortunati asked if the road was blocked.  Snetsinger Dep., at 35; O'Donnell Dep., at 54.  When asked if he had any weapons, Fortunati refused to answer.  Magnant Dep., at 34; O'Donnell Dep., at 54-55.

35.     Fortunati turned away from Snetsinger, walked up the hill toward his campsite and saw other TSU member approaching him.  Snetsinger Dep., at 32-33; O'Donnell Dep., at 59-60; Thomas Dep., 77-78, 80-83; Campagne Dep., at 34; Magnant Dep., at 38.

36.     Sgt. Thomas identified himself as State Police, told Fortunati that he was under arrest, to show them his hands, and to get on the ground.  Thomas Dep., at 91-93.  Instead of complying with any of these orders, Fortunati moved in the other direction, toward his car.  Thomas Dep., at 91-92; Hill Dep., at 29-30; Magnant Dep. at 46.

37.     Trooper Hill fired a less lethal bean bag shotgun at Fortunati. Thomas Dep., 95-96, 98-100; Hill Dep., at 31; Magnant Dep., at 49-50.  The shot missed.  Hill Dep., at 33.

38.     Fortunati then began fleeing through the woods.  Snetsinger Dep., at 41; Thomas Dep., at 101; Hill Dep., at 34; Magnant Dep., at 48, 51-53; Campagne Dep., at 36; O'Donnell Dep., at 63-64; Paquette Dep., at 29.

39.     Several Troopers gave chase, but were unable to catch him.  Thomas Dep., at 102-103; Hill Dep., at 44; Magnant Dep., at 54-55; Campagne Dep., at 39-40; Paquette Dep., at 29-30.

40.     While running away from Troopers through the woods, Fortunati turned and headed back toward his camp.  Snetsinger Dep., at 47; Thomas Dep., at 104-105; Magnant Dep., at 59-60; O'Donnell Dep., at 65-66.

41.     Fortunati emerged from the woods and headed toward his car.  Hill Dep., at 45;
Campagne Dep., at 41.

42.     Trooper Hill fired another bean bag round, but missed.  Hill Dep., at 47, 49;
Paquette Dep., at 32-33.

43.     Fortunati opened the driver's side door of the vehicle, entered it, and began
reaching under the seats or in the console area.  Hill Dep., at 50; Magnant Dep., at 65-66;
Campagne Dep., at 43.

44.     When he exited the vehicle Fortunati moved toward Trooper Hill, who fired two
more bean bag rounds at Fortunati, each hitting him in the chest area with no apparent effect.
Hill Dep., at 53-54, 57.

45.     As Fortunati turned and headed into the field, Hill fired his final bean bag round,
hitting Fortunati in the back, again with little if any visible effect.  Hill Dep. at 57, 60; Thomas
Dep., at 107-108.

46.     As Fortuanti headed into an open field, Thomas saw that Fortunati had a handgun
and announced this to the other Troopers.  Thomas Dep., at 110-111; Magnant Dep., at 91-92,
95; Campagne Dep., at 47; Paquette Dep., at 32-33.

47.     Sgt. Thomas followed Fortunati into the field, repeatedly ordering him to drop the
gun.  Thomas Dep., at 112; Magnant Dep., at 82-83; Campagne Dep., at 45, 48-49.

48.     Fortunati responded to this order by deliberately putting the gun into his
waistband, and continuing across the field away from the officers.  Thomas Dep., at 112-113.

49.     Fortunati then took cover behind a large tree at the edge of the field.  Thomas
Dep., at 117-118; Hill Dep., at 72; Magnant Dep., at 71; O'Donnell Dep., at 74; Paquette Dep., at
41-42.

50.     As Sgt. Thomas, and Troopers Magnant, Hill, and O'Donnell approached through the field, they were exposed to the now armed Fortunati.  Thomas Dep., at 121; Hill Dep., at 66; Magnant Dep., at 82-83; O'Donnell Dep., at 80.

51.     Thomas, Magnant, Hill and O'Donnell had only knee high grass for concealment. Thomas Dep., at 117.

52.     Throughout this period Troopers continually issued orders to Fortunati, such as "show us your hands" or "get on the ground."  Thomas Dep., at 121-122; Hill Dep., at 74; Paquette Dep., at 45-46.

53.     Troopers Snetsinger and Campagne approached through a thin line of saplings to Fortunati's left side.  Snetsinger Dep., at 50-51.

54.     When Trooper Snetsinger gained a position where he could see Fortunati's back, he fired a bean bag round that struck Fortunati in the back.  Snetsinger Dep., at 72, 77; Thomas Dep., at 119-120.

55.     Fortunati made a fast aggressive movement toward the gun in his waistband, removed his handgun, and began raising the weapon.  Snetsinger Dep., at 83; Thomas Dep., at 124; Magnant Dep., at 95-96; Campagne Dep., at 20, 63-64.

56.     Sgt. Thomas and Trooper Campagne fired their weapons. Thomas Dep., at 124-126; Campagne Dep., at 4; Magnant Dep., at 101-102.

57.     Fortunati was fatally wounded.  Deposition of Steven Shapiro, at 10-11.

58.     Upon learning of his son's death, Robert Fortunati Sr., drove his vehicle, a full sized pickup truck, around a police roadblock near what was then a closed crime scene. Snetsinger Dep., at 137-138; Exhibit E, Report of Snetsinger; Exhibit F, Report of Gardner, at AG 578; Exhibit G, Report of Protzman, at AG 866-869.

59.     Officers at the scene believe the truck would either ram the police vehicle or strike them.  Snetsinger Dep., at 137; Exhibit E at VSP 16; Exhibit F at AG 578; Exhibit G at AG 866-869; Protzman Dep., at 116-17.

60.     The truck stopped suddenly only after it had substantially passed the cruiser. Snetsinger Dep., at 138; Exhibit E, at VSP 16; Exhibit F, at AG 578.

61.     Robert then exited his vehicle, approached an officer who was holding a submachine gun, and refused commands to stop and place his hands on the vehicle.  Snetsinger Dep., at 139-42; Exhibit E, Report of Snetsinger; Exhibit F, Report of Gardner, at AG 578; Exhibit G, Report of Protzman, at AG 866-869.

62.     After a brief struggle, Fortunati was turned around, placed against his vehicle and handcuffed.  Snetsinger Dep., at 142-143; Exhibit E at VSP 17; Exhibit F at AG 578; Exhibit G at AG 866-869.

63.     Robert Fortunati suffered no physical injury.

64.     Susan and Mark Fortunati were passengers in the vehicle driven by Robert Fortunati.

65.     Susan and Mark Fortunati, yelled at officers, were ordered out of the vehicle and were subsequently handcuffed.  *See* Snetsinger Dep., at 144.

66.     Susan and Mark Fortunati suffered no physical injuries as a result of this detention.

67.     Robert was charged with careless and negligent driving and resisting arrest, and was driven to a nearby barracks for processing.  *Id.* at 210-213.

**DATED** at Montpelier, Vermont, this 15th day of July, 2009.

STATE OF VERMONT

WILLIAM H. SORRELL
ATTORNEY GENERAL

By:     /s/  David R. Groff
David R. Groff
Kate G. Duffy
Assistant Attorneys General
Office of the Attorney General
109 State Street
Montpelier, Vermont 05609-1001
(802) 828-1101
dgroff@atg.state.vt.us; kduffy@atg.state.vt.us

Counsel for Defendants Andrew Campagne, Marc
Thomas, Jeremy Hill, Todd Protzman, Rob
Snetsinger, Karl Gardner, Hugh O'Donnell, Mike
Dudley, and Walter Goodell