UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

ROBERT A. FORTUNATI, Administrator of the Estate of Joseph Fortunati, ROBERT A. FORTUNATI, SUSAN FORTUNATI, and MARK FORTUNATI,

Plaintiffs,

v.

ANDREW CAMPAGNE, MARC THOMAS, JEREMY HILL, TODD PROTZMAN, ROB SNETSINGER, KARL GARDNER, HUGH O'DONNELL, MIKE DUDLEY, and WALTER GOODELL,

Defendants.

File No. 1:07-cv-143-jgm

**MEMORANDUM AND ORDER DENYING BILL OF COSTS**
(Doc. 179.)

I. Introduction

The Defendants have submitted a bill of costs (Doc. 179), which the Plaintiffs have opposed. (Doc. 180.) The Defendants have filed a reply in response (Doc. 181), and the Plaintiffs have filed a sur-reply. (Doc. 182.) For the reasons that follow, the Defendants' bill of costs is denied in its entirety.

II. Factual Background

This civil rights action arises from the fatal shooting of Joseph Fortunati by Vermont State Police ("VSP") troopers. (Doc. 1 at 4.) Mr. Fortunati's estate brought excessive force claims against the troopers, as well as state negligence claims. Id. at 9-10, 12-14. Many of the allegations focused on the troopers' confrontation with Mr. Fortunati immediately before shooting him. Id. at 3-6. The

allegations also addressed events leading up to this confrontation, including the deployment of a tactical, SWAT-like unit to arrest Mr. Fortunati, who was mentally ill. Id. at 2-3, 5. The estate also alleged the troopers had covered-up wrongful conduct. Id. at 4-5. Several of his family members asserted false arrest claims, based on their detention at the scene of the shooting. Id. at 11.

The troopers initially moved to dismiss the estate's claims, asserting qualified immunity in defense of many of them. (Doc. 19 at 7.) In addition to dismissing some claims on jurisdictional grounds, the Court ruled several claims failed to state meritorious bases for relief. Id. at 10-12, 18-21. At the motion to dismiss stage, however, the Court declined to dismiss any claims on qualified immunity grounds. Id. at 12-14. After a year of discovery, the troopers moved for summary judgment, again asserting qualified immunity. (Doc. 101 at 1.) The Court ruled the troopers were entitled to qualified immunity, as to the estate's excessive force claims, and granted the motion. Id. at 21, 26, 32. In dismissing claims against two supervising troopers, who deployed the tactical unit, the Court described the reasonableness of their decision as a "close call." Id. at 31. The Court noted that the Second Circuit had yet to address the underlying constitutional question–whether deploying a tactical unit could itself violate the Fourth Amendment–and that other circuits had split on this question. Id. at 27-32. The Court also dismissed the estate's state law negligence claims on summary judgment. Id. at 32.

The Court denied the troopers' motion for summary judgment on the family members' false arrest claims. Id. at 34. Following a four-day trial, a jury returned a partial verdict. (Doc. 145.) The jury ruled against Mr. Fortunati's father, but could not reach an unanimous verdict as to his other family members. Id. Based on its review of the trial record, however, the Court ultimately granted judgment as a matter of law against these remaining defendants on qualified immunity grounds. (Doc. 174 at 21.)

The Court entered judgment against the Plaintiffs on March 31, 2011. (Doc. 177.) Approximately a week later, the Defendants filed a bill of costs. (Doc. 179 at 1.) The bill seeks nearly eleven thousand dollars for costs associated with depositions taken during discovery. Id. This amount includes nearly a thousand dollars the Defendants spent to videotape the deposition of the Plaintiffs' expert, as well as over two thousand dollars the Defendants paid a court reporter to attend and transcribe that same deposition. Id. at 7-8. The bill of costs also seeks slightly less than five hundred dollars for the attendance of the Defendants' expert at trial, including his airfare from Virginia to Vermont. Id. at 28-29.

The Plaintiffs filed a notice of appeal on April 28, 2011. (Doc. 183.) As a consequence, the Court withheld consideration of the bill of costs until the appeal was resolved. Doc. 185; see also L.R. D. Vt. 54(b). On December 21, 2012, the Second Circuit affirmed this Court's grant of summary judgment and judgment as a matter of law. (Doc. 186 at 1.)

III. Discussion

At the outset, the Court notes the clerk has yet to tax costs. Federal Rule of Civil Procedure 54(d) provides that the clerk should first tax costs, with the court reviewing the clerk's action by motion. In response to the bill of costs here, the Plaintiffs moved this Court to deny costs. (Doc. 180 at 5.) The Defendants subsequently filed a reply memorandum, which did not object to the Court's direct review of the bill. See Doc. 181 at 1-11. The Court will exercise its discretion and decide the costs issue at this time. The Court acknowledges that the proper procedure is for the clerk to first tax costs. However, the parties have fully briefed the costs issue; the Defendants have not objected to its resolution by the Court; and the Court ordinarily reviews any costs awarded by the clerk de novo. See Whitfield v. Scully, 241 F.3d 264, 269 (2d Cir. 2001) ("A district court reviews the clerk's taxation of costs by exercising its own discretion to decide the cost question

itself.") (internal quotations and alterations omitted). Given the procedural posture of this case, deciding the costs issue now best utilizes judicial resources. Indeed, "it makes no difference that this request for costs bypassed the Clerk's Office, because the request would have come before this Court anyway in light of the plaintiff's objections." Howell v. NYC Leadership Acad., Inc., No. 05-cv-8233, 2008 WL 5336891, at *3 (S.D.N.Y. Dec. 20, 2008).

"[T]he decision of whether to award costs . . . under [Rule 54(d)] 'is committed to the sound discretion of the district court.'" Cosgrove v. Sears, Roebuck & Co., 191 F.3d 98, 102 (2d Cir. 1999) (quoting ARP Films, Inc. v. Marvel Entm't Group, Inc., 952 F.2d 643, 651 (2d Cir. 1991)). Rule 54(d) provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party." The Second Circuit has stressed that "an award [of costs] against the losing party is the normal rule . . . in civil litigation, not an exception." Whitfield, 241 F.3d at 270. Notwithstanding this presumption, however, "costs may be denied because of misconduct by the prevailing party, the public importance of the case, the difficulty of the issues, or the losing party's limited financial resources." Id. The courts have also considered whether the prevailing party acted wrongfully, whether the plaintiff filed suit in good faith, and whether the litigation was "complex and protracted." See AXA Versicherung AG v. New Hampshire Ins. Co., 769 F. Supp. 2d 623, 625-26 (S.D.N.Y. 2011) (citing cases). If awarding costs "would be inequitable or unfair," a court may decline to do so. Id. at 625 (internal quotations omitted). The losing party bears the burden of showing that costs should not be imposed. Whitfield, 241 F.3d at 270.

28 U.S.C. § 1920 enumerates the expenses "[a] judge or clerk . . . may tax as costs." A court may only tax a cost under Rule 54(d) if it is listed in section 1920. Whitfield, 241 F.3d at 269. The taxable expenses set forth in that section include, in pertinent part:

> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; [and] (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case . . . .

28 U.S.C. § 1920(2)-(4).

The Plaintiffs dispute the bill of costs on several grounds. The Plaintiffs contend this Court should apportion costs to the estate, rather than the family members. (Doc. 180 at 1-4.) They assert all of the costs result from the estate's case, rendering an award against the family members improper. Id. at 1. In addition to challenging the factual basis for this assertion, the Defendants respond that all losing parties are joint and severally liable for costs. (Doc. 181 at 3.) The Plaintiffs also dispute the necessity of several expenses, including the costs associated with videotaping and transcribing the deposition of their expert. (Doc. 180 at 2-3.) The Defendants justify each disputed expense in response. (Doc. 181 at 6-10.) The Plaintiffs raise additional questions about the timeliness of the bill of costs, as well as the propriety of taxing costs in civil rights actions. (Doc. 180 at 2; Doc. 182 at 1-2.)

The Court finds the Plaintiffs' last argument persuasive.[1] The public importance of this particular civil rights action, the difficult and close issues raised in it, its complex and protracted nature, and the Plaintiffs' good faith render the taxation of costs inappropriate. See Whitfield, 241 F.3d at 270; AXA Versicherung AG, 769 F. Supp. 2d at 625-26. While the Plaintiffs appear to argue the taxation of costs in civil rights cases is categorically barred, see Doc. 180 at 2, the Court limits its ruling to the specific facts of this case. Through this lawsuit, the Plaintiffs sought, in part, to vindicate the constitutional rights of Mr. Fortunati, a mentally ill man whom VSP troopers fatally

[1] Because the Court has determined taxing costs is inappropriate in this case, the Court need not address the Plaintiffs' other arguments.

shot. Together, the use of deadly force by the VSP and Mr. Fortunati's mental illness make this action a matter of significant public importance. See Ass'n of Mexican Am. Educators v. California, 231 F.3d 572, 592-93 (9th Cir. 2000) (en banc) (affirming denial of costs based, in part, on public importance of civil rights action challenging state teaching exam that minority candidates failed disproportionately).

"The intrusiveness of a seizure by means of deadly force is unmatched." Tennessee v. Garner, 471 U.S. 1, 9 (1985). The use of deadly force compromises "the suspect's fundamental interest in his own life, . . . [while also] frustrat[ing] the interest of the individual, and of society, in judicial determination of guilt and punishment." Id. Furthermore, when a death tragically results, the criminal justice system will not set in motion its own checks on the constitutionality of police conduct, including the suppression of illegally seized evidence. See id. at 10. Nor is the deceased's account of the shooting available. The need for discovery to test the police officers' accounts is especially acute under these circumstances.

This civil rights action also examined the reasonableness of the VSP's response to a mentally ill man in crisis. The VSP responded by deploying its tactical unit, despite the availability of less extreme remedies. The Court ultimately disposed of the claims stemming from this deployment on qualified immunity grounds. In reaching this resolution, however, this action initiated an important examination of the VSP's procedures for arresting mentally ill suspects. Because a costs award could have a chilling effect on similar actions in the future, the importance of this civil rights action weighs against taxing costs. Ass'n of Mexican Am. Educators, 231 F.3d at 593 (imposing "overwhelming costs in important, close, but ultimately unsuccessful civil rights cases like this one might have the regrettable effect of discouraging potential plaintiffs from bringing such cases at all").

Additional factors also support denying costs here. This action raised difficult issues, including a question of first impression in the Second Circuit–whether deploying a tactical unit could itself violate the Fourth Amendment–over which other courts of appeal had split. (Doc. 101 at 27-28.) While it granted the troopers who deployed the unit qualified immunity, the Court described the reasonableness of their decision as a "close call." Id. at 31. In affirming this Court's qualified immunity ruling, the Second Circuit noted it had yet to decide whether the deployment of a tactical unit could violate the Fourth Amendment and recognized the jurisdictional split on this question. (Doc. 186 at 4.) The litigation in this case was also "complex and protracted," taking nearly four years, three rounds of dispositive motions, and a four-day trial to reach judgment. See AXA Versicherung AG, 769 F. Supp. 2d at 626. The Court is unable to discern any basis for finding that the Plaintiffs' acted in bad faith in filing suit. See id. at 625.

IV. Conclusion

In light of all of the above factors, the Court declines to tax costs against the Plaintiffs. The Defendants' bill of costs is DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 28th day of May, 2013.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge